IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 6, 2007

## KIM MCGILL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 98-01881    Arthur T. Bennett, Judge**

---

**No. W2006-00499-CCA-R3-PC  - Filed May 23, 2007**

---

The Appellant, Kim McGill, appeals the Shelby County Criminal Court's denial of her petition for post-conviction relief. McGill pled guilty to aggravated robbery and received a sentence of 7.2 years, as a mitigated offender, to be served in the Department of Correction. On appeal, she asserts that trial counsel was ineffective for failing to advise her of the right to request recusal of the trial judge based upon the judge's comments to the Appellant following her request to obtain private counsel. Following review, we affirm the denial of the petition.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Paul E. Lewis, Millington, Tennessee, for the Appellant, Kim McGill.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee V. Coffee, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

On February 17, 1998, the Appellant was indicted for one count of aggravated robbery. The facts, as recited at the Appellant's bond reduction hearing, established that, on September 29, 1997, the Appellant, along with an unidentified male accomplice, robbed the Appellant's grandmother at gunpoint.[1] The two took the victim's 1990 Cadillac and her purse, which contained $600 cash, assorted checks, identification, and personal papers. The Appellant was ultimately arrested and placed in custody on March 11, 2003. On March 14, the Appellant was found indigent, and the

---

[1]A transcript of the guilty plea hearing was not included in the record.

Public Defender's Office was appointed to represent her.[2] The Appellant remained incarcerated until April 23, 2003, at which time she was released on a $25,000 bond. Following multiple court appearances, the Appellant again reported to court on July 11, 2003, and requested additional time to "possibly" obtain private counsel and to set her affairs in order should she plead guilty. The trial court granted a two-week continuance of her report date but informed the Appellant that, regardless of whether she employed private counsel, if no settlement of the case was reached by July 24, she would either be going to trial or pleading guilty without the benefit of a plea agreement. On July 25, 2003, the Appellant, with representation from the Public Defender's Office, pled guilty as indicted and received a sentence of 7.2 years, as a mitigated offender, to be served in the Department of Correction.[3]

On July 22, 2004, the Appellant filed a *pro se* petition for post-conviction relief alleging, among other grounds, ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed in July, 2005. An evidentiary hearing was held on November 10, 2005, at which trial counsel and the Appellant testified. Trial counsel testified that he was employed with the Shelby County Public Defender's Office and that he was appointed to represent the Appellant on March 14, 2003. He stated that he met with the Appellant, discussed the facts of her case with her, and reviewed the discovery materials which he received from the State. According to trial counsel, an investigator with his office interviewed the victim, the Appellant's grandmother, and learned that she no longer wished to press charges. The State, however, refused to dismiss the case. Trial counsel stated that he attempted to negotiate a possible reduction in the charged offense with the State in order to permit the Appellant's eligibility for a suspended sentence. However, because of the State's "no deals" policy in effect at the time, no reduction was allowed. Trial counsel was, however, able to obtain a plea offer from the State of 7.2 years incarceration as a mitigated offender, as opposed to the original offer of eight years confinement as a standard offender. Trial counsel stated that he informed the Appellant of the consequences of accepting the plea agreement and made clear to her that it was her decision whether to accept the offer or proceed to trial.

Trial counsel also testified regarding a colloquy which occurred between the Appellant and the trial court at a scheduled report date on July 11, 2003, following trial counsel's statement to the court that the Appellant was considering retaining private counsel. Trial counsel stated that there was nothing unusual in the pronouncement, that the court's statement was part of its standard policy, and that he saw no basis for recusal of the judge based upon the statement. Moreover, trial counsel further noted that the Appellant never discussed with him, prior to the entry of her plea, her desire to have the trial judge recused, nor following the plea, her desire to withdraw her guilty plea based upon the judge's comments.

---

[2]The proof established that the Appellant, who, at the time of her arrest, lived with her grandmother, was an unemployed, single mother of three children.

[3]We must assume that the 24th deadline was extended to the 25th, as the record shows that the Appellant pled guilty on July 25th.

The Appellant, in contrast, testified that trial counsel refused to discuss the case with her and that she was confused about her options. Due to these uncertainties, she stated that she had considered retaining private counsel with funds she had obtained from an insurance settlement. According to the Appellant, she had already contacted private counsel prior to the July 11th exchange with the court, although final arrangements of employment had not been made. The Appellant stated that she did not retain private counsel after the trial court's comments because she was afraid, based upon her understanding of those comments, that her bond would be immediately revoked and that she would not be allowed to enter a guilty plea in the case.

Following the presentation of evidence, the post-conviction court denied the Appellant's petition, finding that she received the effective assistance of counsel. This appeal followed.

**Analysis**

To succeed on a challenge of ineffective assistance of counsel, the Appellant bears the burden of establishing the allegations set forth in her petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). The Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). With a guilty plea, to satisfy the "prejudice" prong, the Appellant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Burns*, 6 S.W.3d at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law*,

are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

On appeal, the Appellant contends that trial counsel's single omission of failing to advise her of her right to request recusal of the trial judge requires that her conviction be vacated. She asserts that the trial court's response to her request to retain private counsel entitled her to a recusal because it interfered with her "right to an attorney of her choosing and a right to enter a guilty plea." The relevant portion of the dialogue is as follows:

> [Trial Counsel]: . . . I told [the Appellant] what her options were and under this charge since she wouldn't be entitled to ask for probation if she entered a plea she'd have to go into custody.
>
> I told her her options were either to accept 7.2, [years in confinement or] set the matter for trial. I advised her what Your Honor's policy on trial was. . . .
>
> . . . .
>
> . . . She said since she's got those two children, two and three, that she wants a little time to think through her options and possibly hire a private attorney. I told her I'd tell the Court that.
>
> The Court: Alright. Ma'am, let me just say this, if you hire a private lawyer I'm not accepting a plea in your case. Do you understand that? If you hire a private lawyer, they come on board I'm setting your case for trial in four weeks. What I'm not going to do is have you try to think somehow you can pay some lawyer and get some offer reduced.
>
> If the State of Tennessee was reducing your offer because you had a private lawyer I would not accept their offer. Do you understand that, ma'am?
>
> [The Appellant]: Yes, sir.
>
> The Court: You're going to have to either take the 7.2 years or you're going to have to take a jury trial. You need to understand that if you plead guilty to 7.2 years I'm taking you into custody that day. If you go to a jury trial and you're convicted your bond by law has to be revoked that day and you'll be in jail until your sentencing hearing when you're going to get somewhere between 7.2 and twelve years. Okay?
>
> Everything your attorney told you is true. Now, I'm going to reset this case one more time but on that day if this case is not settled by plea it will be tried and you will not be allowed to plead guilty. Do you understand that?
>
> [The Appellant]: Yes, sir.

. . . .

The Court: Be back Thursday, July 24th. Now, ma'am, at the end of court that day one of three things is going to be true. You're either going to plead guilty and gone [sic] into custody or you're going to be set for trial and I will not allow you to settle your case, and you'll be tried in three weeks, four weeks. Or you're not going to show up and in which case I'll have to issue a warrant for your arrest. When you're arrested you'll be in jail until the case is tried.

I know you'll show up but I just want to let you know that's not an option. Okay? But on July 24th you're going to have to face this decision one way or the other. Alright?

[The Appellant]: Yes, sir.

The Appellant argues that the "exchange" between the trial judge and the Appellant "at least presents the appearance of partiality[,]" and it "g[ives] the appearance of requiring the [Appellant] to surrender the right to private counsel in order to exercise the right to plead guilty." In sum, she contends that "should [she have chosen] to hire a private attorney, she would not be allowed to plead guilty." Accordingly, the Appellant argues that trial counsel was deficient in failing to advise her that she had the right to request that the trial judge recuse himself in the case.

Initially, we note that this argument is clearly misplaced as the Appellant has misinterpreted the statement of the trial judge at the July 11th report date. In his final remarks to the Appellant on July 11, the trial judge unambiguously informed the Appellant that, upon her return to court on July 24, "one of three things" would happen: (1) the Appellant would plead guilty under the terms of the existing negotiated plea agreement and be placed in custody, as required by Tennessee Code Annotated section 40-35-303(a); (2) the Appellant's case would be set for trial in four weeks; or (3) if the Appellant failed to appear, a warrant would be issued for her arrest. The Appellant misconstrues the trial court's comments that she would not be allowed to plead guilty after July 24. Reading the trial court's admonitions to the Appellant in their entirety, it is obvious that the court's statements, "You will not be allowed to plead guilty" and "If you hire a private lawyer I'm not accepting a plea in your case," were made within the context that "if this case is not settled by a plea" on or before July 24 and the case is set for trial, "I will not allow you to settle your case." That is, no plea agreement would be accepted by the trial judge after July 24, and, if the Appellant chose to plead guilty at this stage, she would be required to plead "open" to the indictment.

This procedure is entirely consistent with the provisions of Tenn. R. Crim. P. 11 and the trial court's authority to control the orderly process of the case and the court's docket.[4] Tenn. R. Crim. P. 11(e)(5) provides that, except for good cause shown, notification to the court of the existence of

---

[4]Following her finding of indigency and appointment of counsel on March 14, 2003, the Appellant appeared before the court on the dates of April 22, May 8, May 27, June 27, July 11, and July 25, with the first mention of retaining private counsel occurring on July 11.

a plea agreement shall be given at the arraignment or at such other time prior to trial as may be fixed by the court. Moreover, Tenn. R. Crim. P. 11(e)(4) permits rejection of a guilty plea by the trial court.

While the Appellant is correct that the right to counsel includes the right of the criminal defendant to select his or her own counsel if the defendant acts expeditiously, the court, however, is not obligated to accommodate the scheduling needs of a preferred attorney. Thus, the Appellant's argument "that the conduct of [the trial judge] required the Appellant to choose between the right to counsel and the right to plead guilty" is without merit. Other than the bare assertions of the Appellant, there was no proof presented that private counsel was ever chosen or retained in this case. There is a great gulf between discussing the "possibility of hiring private counsel" and the actual retention of private counsel.

As testified to at the post-conviction hearing, trial counsel did not believe that the trial court's remarks to the Appellant were in any manner "inappropriate" or "coercive." Moreover, counsel testified that the Appellant never expressed to him any concerns regarding the trial court's remarks of July 11. In its written order denying relief, the post-conviction court specifically found that the Appellant's "contention with [regard to the trial court's] statements [did] not trigger his duty to recuse."[5]

In any post-conviction proceeding in which deficient representation is alleged based upon a failure to perform, as here failure to file a motion for recusal, it is the Appellant's burden to show by clear and convincing evidence that (1) the motion to recuse, if made, would have been granted; and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. The Appellant has failed to satisfy either factor in this case. Accordingly, post-conviction relief was properly denied.


## CONCLUSION

Based upon the foregoing, the Shelby County Criminal Court's denial of the Appellant's petition for post-conviction relief was properly denied.


                    _____
                    DAVID G. HAYES, JUDGE

---

[5]In view of the nature of the Appellant's allegation, the post-conviction proceeding was transferred to another division of the Shelby County Criminal Court.